Good morning, Your Honors. May it please the Court, my name is Todd Grover, I represent the appellant in this case, Mr. John Bray. By way of introductory remarks, it's my hope this morning to cover broadly speaking the issues that I see presented and then I'm hoping that we can spend most of our time together answering specific questions that you may have. There are, as the Court is aware, four different ineffective assistance counsel claims presented. There are then some uncertified issues which we have asked this Court to consider. I intend to limit my opening, or at least my initial remarks, to the certified issues which are the ineffective assistance claims, but of course would answer any questions that you may have. Fundamentally, I think we can say that this is a case about the role of criminal defense attorneys. And I think broadly speaking, there are two different Sixth Amendment issues presented for your consideration. The first is whether, consistent with the Sixth Amendment right to the effective assistance of counsel, a criminal defense attorney provides adequate, constitutionally adequate assistance when, prior to trial, he fails to conduct an independent factual investigation, but opts instead to rely upon the facts that are fed to him, if you will, in the normal course of the discovery process in a criminal case. In this case, that is what occurred, and it caused two specific problems for Mr. Bray. The first was his trial attorneys failed to discover evidence purporting to link him to a large amount of methamphetamine discovered at a storage facility on Claxter Road in Salem, and that's an issue that came back to bite Mr. Bray during the penalty phase of his trial. So the argument the government makes is that the court gave defense counsel time to investigate, and what they found was Mr. Bray's fingerprints on the bottle, which I guess their expert didn't rebut, and the quantity they didn't rebut, and so they put on evidence merely of value. Is that correct? And so the argument is, well, because the defense counsel had enough time to investigate, that wasn't prejudicial. It's correct in part, Your Honor. So what the record reflects is that, yes, when the – during the penalty phase of the trial, when the Claxter Road evidence was sprung upon defense counsel, if you will, the trial court in Polk County did, in fact, turn to defense counsel and say, gentlemen, I'm going to give you whatever time you need to rebut the case. I'm not going to declare a mistrial. And there are references in the trial court, the criminal trial court record, that would suggest that, indeed, defense counsel did some after-hours work. I think they would suggest they called down somebody to perhaps test the substance that was discovered to determine whether that was indeed methamphetamine, and perhaps to determine whether, indeed, that was Mr. Bray's thumbprint on the apple juice bottle that was discovered in the lab. But that was it. There is references, or there are – there's a reference in the appellee's brief to the fact that they had brought in somebody to testify and dispute the street value, if you will, of the 5-gallon drum of methamphetamine. But that's incorrect. That's something that defense counsel, who was called to testify during post-conviction proceedings, testified that it happened. But, in fact, it turns out he was mistaken. If you go back and you look at the actual Polk County criminal trial transcript, no such witness came in for the defense and testified. But I think the bigger issue – Kagan, who would have been different if he had invested – the attorney had investigated it in advance? I know there were some representations about the plea, like a Lafler claim, but I didn't really understand how that would play out and whether the police even had that information about Claxton Road at the time of the plea discussions. Sure, Your Honor. Let me address the timing issue first, and then I'm going to try to answer more directly the question. The timing issue was that, yes, the police would have had that information at the time of plea discussions. So the – They had the fingerprint and the – Correct. So there were a series of search warrants that were served throughout Marion County that ultimately included this trailer. Those were in July of 1992. It was then a few months later, in September of 1992, that William Steiner went down to the Oregon State Police and essentially confessed to the homicide implicating Mr. Bray and Mr. Hathi. Those individuals were then arrested. The Polk County murder prosecution commences at the same time that that's occurring. The police in Marion County, where this drug lab was discovered, are investigating and prosecuting through the Marion County District Attorney's Office the drug case. And so all of that – the drug case was known to everybody at the time that Mr. Bray's murder prosecution commenced and then the year thereafter. But I forgot the first part of your question. What would have been different had the attorney investigated it in advance? Absolutely. So Mr. Bray testified during a deposition that was taken by the Department of Justice by the State during the post-conviction proceedings. And Mr. Bray's testimony was – he said a couple things responsive to your question. He said, hey, first of all, if I had known about this prior to trial, that would have contributed to my decision about what I'm going to do about a plea offer. He said during his deposition testimony, the State had offered me an 8-year deal at one point. And I didn't want to take it, in part because I didn't want to plead guilty to murder, but in part because I didn't know about this Claxton Road drug case and five-gallon drum full of methamphetamine. And he said during his deposition, hey, if I would have known that, I mean, five gallons of methamphetamine, I can get prosecuted in the U.S. Attorney's Office and Portland's going to prosecute me for a federal drug crime. I'm going to do life on a drug case given that much meth. So his testimony during the deposition is, yeah, that would have made me think, well, better to do eight years on a homicide case than have to face the drug case. The other thing that he said during- That doesn't go all the way to a Lafler argument, because Lafler says that he has to say, or at least the government argues, that he has to say, I would have taken the plea. And the government cites a response, in response to the question, would you have taken the plea if you had known the Claxton Road incident? He says, that's not what I'm saying. I would have just given more serious consideration. You're correct, Your Honor. And this is really the only testimony or the only evidence we do have in the record on this point about would he have taken the plea or not. And you've got the record in front of you. But essentially he says, well, I think I seriously would have considered it or something to that effect. But the other thing that he said during his deposition about what would have changed, what would he have done different if counsel had, in fact, discovered this prior to trial, is they could have prepared to prove, prior to trial, that he did not own this trailer that was found at the Claxton Road facility, that he had sold it to a gentleman by the name of Ed Christofferson sometime prior. Now, I So the government says, well, his fingerprints were on the container. So does it really matter whether he owns it or not? Well, yes, except that, you know, at the 11th hour of the penalty phase of a capital murder case, it's too late to develop any evidence that would just, you know, relate to why could it be that his fingerprints are still on the apple juice jar. Now, it's entirely possible, and there is evidence in the record, that at one point in time, earlier, Mr. Bray had owned the trailer. It was parked at his residence. And so it is certainly plausible, though there is no evidence in the record to refuse to prove this because they didn't have time to develop it, but it's certainly plausible that Mr. Bray drank some apple juice, left it in a jar in the trailer, sold the trailer to Ed Christofferson, and Mr. Christofferson decided to manufacture meth and used the same method to make a mistake. When you're saying the defense counsel didn't have time to do that investigation despite the continuance that he was given, there wasn't enough time? Well, he wasn't given a continuance. I think the record reflects he was the Judge Lucan in the Polk County trial judge said, hey, you can have whatever time you needed, but as I'm reading the Polk County trial transcript, at least what I'm gathering from that, Your Honor, is that these guys are scrambling after hours in the middle of the trial to try to get experts down here, and that they did not, in fact, request any delay in the proceedings to further their investigation, and essentially just had to concede the inference suggested by the thumbprint. Did you want to turn to your other claim that you first started off with? Sure, Your Honor. And I'm going to try to do this very briefly because I'd like to leave just a moment or two for rebuttal. And that is, Your Honor, the other issue that I think is of paramount importance in this case is counsel's failure during trial to adequately object to the introduction of sexual misconduct evidence, which was elicited by the prosecution from Mr. William Steiner, and then when Mr. Bray testified on cross-examination of Mr. Bray. And it was extensive. It was graphic. And there is one to a long litany of questions about sexual misconduct involving other minors in the Salem area, about prostitutes, about anally raping Mr. Steiner. There's one relevant subjection to the question of whether or not, I think the question was, how often did Mr. Bray want to have sex with you, Mr. Steiner? Objection, relevance. It was overruled. After that, counsel sat down, sat on their hands, and did nothing. This evidence was relevant to nothing at issue in the guilt phase of the case. No reasonably competent criminal defense attorney would have been satisfied with that single relevant subjection. Well, I think with respect, there was one point during the trial, or during that series of questions, where defense counsel at a break asked for a conference with the judge and said, judge, you know, I have some concerns about this line of questioning. I didn't object because I didn't want to emphasize or to further draw it to the jury's attention to make an issue out of it. But if it continues, or if he raises it during the course of his oral, of his summation argument, then I'm really going to object, and I'm going to ask for a mistrial, blah, blah, blah. And in fact, the prosecutor didn't raise the sexual conduct with others in his closing. Yes, you are correct, and you are correct as well, in right and right lease. So why isn't, counsel, I don't know if Judge Selma's had this experience, but many times counsel will say, judge, I didn't object because I didn't want to draw it to the jury's attention, and they'll bring it to the judge's attention at sidebar or at a break. And they put the prosecution on notice, and they raise the issue, and usually that takes care of the problem. It does, but what happened here, Your Honor, is that that colloquy occurred after Mr. Bray had testified. After the cat was well out of the bag, or the bell was rung, or whatever the metaphor was, there's, there could be no doubt that the jury understood the implications of the questions that the prosecutor had asked. But wasn't counsel's position a classic instance of counsel making a tactical decision under Strickland? I agree that counsel said during post-conviction proceedings, yes, this was a strategic decision, because we didn't want to. But, Your Honor- But is it clearly wrong to conclude, I would have caused more harm by going, by objecting than by being silent? Is there anything wrong with that, generically? Yes, given the facts of this case. So you're right, trial counsel does enjoy a presumption in terms of that they are constitutionally adequate when they make, when we make tactical decisions, but like every presumption, it can be overcome. And in this case, the record speaks for itself. No reasonably competent defense attorney would have taken that tact. There can be no question that jurors well understood the meaning of what was being implied by the prosecutor. Your Honor, may I reserve my last minute? Thank you. Yes. You may. May it please the Court and good morning. I'd like to start by apologizing to the Court. In the reply brief, it points out two errors that I made, and it is correct. I did make two errors. But I'll explain to the Court in short order why those two errors don't matter to the result of this case. I'd also take a little bit of issue with the fundamental issue that we're addressing here as stated by opposing counsel. The fundamental issue that we're addressing here is whether the state courts are owed deference. We are not here to re-litigate the underlying post-conviction case. And so, with respect to the first claim, the Claxter Road Laboratory claim, the state's courts are owed deference because they reasonably determined the facts with respect to the Claxter Road lab. Counsel objected, they moved for a mistrial, they got all the time they needed to investigate this situation. And they did consult with a fingerprint expert and an expert on the meth lab, on the meth itself. That expert was called down to trial and ultimately the two parties discussed whether the expert testified, the prosecutor engaged in a colloquy about the discussions. And said that after consulting with the experts, defense counsel had determined that the expert testimony would not be helpful to the defense. And defense counsel agreed with that statement. So, there is no question here that there are facts in this record to support the underlying court's determination that they adequately investigated. Also, remember that in this case, it was the Petitioner's burden to present proof that counsel could have done something to rebut the state's evidence. And Petitioner never came forward with affidavits from experts, showing that they could have rebutted the evidence about the fingerprints. They never came forward with any expert testimony showing that counsel could have rebutted the presence of methamphetamine or the amount of methamphetamine. In the post-conviction state habeas case? Correct. Correct. And so there's a failure to prove prejudice here. That's supported by this record. With respect to the claim about the plea negotiations, it's still our position that that is procedurally defaulted. But even if it's not, the record here supports the determination below that Petitioner failed to prove prejudice because he failed to prove that he would have taken a plea under any circumstances. His position was, I was not guilty of murder. I will not plead to anything that involves my admitting culpability to murder. That was the plea offer on the table. I wouldn't have taken it. So there's evidence in this record to support the determination that Petitioner failed to show prejudice on that aspect of the case. The suggestion from Petitioner is, if I'd known about potential Federal liability, I would have taken this 8-year deal. But was there ever the possibility that if Petitioner had taken the deal, he would have been immune from Federal prosecution? It seemed like a non sequitur. I don't know, because this claim, the reason that we argued below that this was procedurally defaulted was that the only mention of this plea deal was a couple of sentences in the Petitioner's deposition. The way the claim had been pleaded in the petition and argued below by counsel was that counsel failed to adequately investigate and present penalty phase evidence And you'll note in the SCR, I've included the State's brief on direct review, that they're saying suddenly this claim has metamorphosed into this plea deal situation. So below, we were never able to ascertain whether a plea had been offered, whether it was an 8-year plea deal, or anything concerning the plea deal, because we simply weren't aware that that was a claim involved in the case. And so in the end, though, it doesn't make any difference in my mind, because what Petitioner was saying in his deposition is, boy, if I had known about this Claxter Road Drug Lab stuff, it certainly would have given me pause, but I wouldn't have taken that plea deal because that required me to plead guilty to murder. And to me, that's the end of the discussion. That part of the record supports the determination below that Petitioner failed to prove prejudice. With respect to Mr. Steiner's plea deal, again, it shows, the record here shows that the State courts reasonably applied Strickland, and that Strickland requires deference to counsel. So counsel obtained a transcript of the plea negotiations. He cross-examined Steiner with that transcript. He clarified with Steiner, after some prevarication on Steiner's part, that the transcript accurately reflected the plea deal. Counsel also called Steiner's counsel and was at least considering calling her as a witness and then in the end, as cited in the red brief, decided not to call her as a witness because she was not going to be helpful to the defense. So when you apply double deference, it's reasonable that counsel would have relied on the transcript and the cross-examination just as he did. And it's reasonable that the State courts found that Petitioner did not prove this claim under Strickland. With respect to the testimony about sexual relations with Mr. Steiner and potentially other children, I'd first like to ask, did the Court get my 28-J letter? Okay. Reasonable trial counsel could conclude that at this point in time, the 28-J letter the Oregon Evidence Code has changed somewhat since this point in time, but at this point in time, that evidence was absolutely admissible to show Steiner's plan and motive under 4043, and that there was case law in capital cases at the time that show that this type of motive evidence was not considered to be more prejudicial than probative. So because there was some case law, because of the evidence code at the time, counsel reasonably made the determination about Steiner's testimony. They objected to it. That objection was overruled. Further objection on this particular basis would not have been fruitful. With respect to other children, when Steiner started to more directly testify about what Petitioner might have been doing with other children, counsel objected, and that objection was sustained, so he stopped that testimony. With respect to the innuendo that the prosecutor was presenting about what Petitioner might have been doing with other children that he had taken into his home, counsel made a reasonable tactical decision. And again, it might not seem reasonable to us here, but that's not the standard. The standard is, could it have been reasonable to counsel, and did the court reasonably apply Strickland in making that determination? And given this record, it did. And finally, with respect to the military records, in the reply brief, counsel cites to testimony by a Mr. Allen with respect to the military records. Mr. Allen says at the beginning of his testimony that, yes, he saw Petitioner's military records. He doesn't recite them. He appears to be giving testimony that's a combination of Petitioner's military records and his own personal experience. But regardless, Petitioner in the underlying post-conviction case never presented those military records. And without those military records, there is no way of knowing whether they would have bolstered any aspect of this defense. So the military records were not introduced with Robert Allen's testimony, because he's reading from documents about what awards Mr. Bray had received. The military records, and I forget whether Mr. Allen's testimony was in the guilt phase or the penalty phase. In the penalty phase, the military records were introduced, and in the penalty phase there was a lot of testimony about the military awards that the Petitioner had received. So in that respect, the military records were really helpful to the defense in the penalty phase. In the guilt phase, what the issue with the military records was, was there were two somewhat contradictory claims by the Petitioner. One was evidence from some of the witnesses that Petitioner had claimed that Joe Dutton's body never would have been found if he had disposed of it, because he had experienced  And then the other somewhat contradictory claim was that Mr. Bray in his own testimony said that he had dealt with bodies a lot in Vietnam, bodies freaked him out, and he could not have been involved in something like disposing of Joe Dutton's body. So the issue with the military records was whether they did or did not confirm whether Mr. Bray had dealt with bodies in Vietnam. And we simply don't know. We don't know to this day whether those military records said anything about any duties involving bodies. I don't think there was any dispute that he served in Vietnam. I don't think that there was any dispute that he was in what was called a tank retrieval unit, where they go out and, with heavy equipment, apparently they get and retrieve broken-down equipment after combat. But there's no showing by the Petitioner that the military service records would have reflected Mr. Bray's dealings with bodies in Vietnam. And without that evidence, we can't tell whether it would have bolstered his claims in the guilt phase of the trial or not. And so the adjudication below that he failed to prove prejudice on this claim is supported by the record and it's owed deference. If there is anything else I can address for the Court, I'd be happy to do so. Okay? Scalia. On that last point, if you're speaking to the State court's judgment, the State court really doesn't get into prejudice on that point, does it? In State post-conviction proceedings? Or are you talking about did the judge in this case? I think that the judge in this case, and again, I can't remember this specifically, but I think he made an overall broad finding, Petitioner failed to prove prejudice. I don't know if he made a specific finding on this particular claim that he failed to prove prejudice. I believe he did. I believe it was Judge Lipscomb's opinion. But I can't swear by that. But it should have been encompassed in a general finding that he failed to prove prejudice. Is that right? All right. Thank you. We appreciate your arguments. Thank you, Your Honors. Very briefly, Your Honor, I wanted to answer the question that you had raised early on regarding how the potential for a Federal drug prosecution might have played into this Claxter Road issue. The evidence in the record, and this was in the trial court record in Polk County, was that at the time that the homicide prosecution was commenced in or around September of 1992, there was an ongoing drug case involving Mr. Bray and others as a result of these search warrants. That was going in an adjacent county, Marion County. Marion County prosecutors did have discussions with the U.S. Attorney's Office about perhaps this becoming a Federal case because of the quantity of controlled substance involved. The U.S. Attorney overseeing that aspect of the investigation had written a letter that was introduced into evidence in the Polk County homicide trial. That letter said, in essence, it's the U.S. Attorney's position that if all of these individuals get lengthy state prison sentences as a consequence of the homicide trial, we, the Federal Government, will essentially say we're not going to prosecute the drug case because ---- But it's eight years lengthy. Pardon me? It's eight years lengthy. I mean, mandatory minimums probably would have kicked in for that quantity of drugs. Sure. I can't speak to what the U.S. Attorney felt about whether eight years would have been sufficient for him to say, hey, we're going to back off and not pursue that. Your Honor, the only other point that I wanted to address related to the sexual misconduct claim, there is this argument that the testimony from William Steiner about having to have sex with Mr. Bray was somehow relevant to his motive to kill Georgia Dutton. I think that can be easily answered by saying Mr. Steiner testified at the trial exactly why he killed Ms. Dutton, and it wasn't because he wanted to continue living in Mr. Bray's house or having sexual relations with him. Mr. Steiner testified that he killed Georgia Dutton because he was afraid that if he didn't, that John Bray would kill him. So that was his motive in testifying. The sexual misconduct evidence, therefore, was simply not relevant to the case. Your Honor, the only other issue I'll address is there was question about whether the military records were introduced during the guilt phase or the penalty phase. It was the penalty phase in which those were introduced. Counsel is correct. They were not subsequently reintroduced during the State postconviction proceedings, however. Okay. Thank you. Thank you, counsel. We appreciate counsel's arguments this morning and the matter is submitted at this time. That ends our session for the day and for the week. Thank you. This court for this session is standing adjourned.
judges: Selna, Paez, Ikuta